IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ANDREA WOODSON | ) | CASE NO.: |
| 834 Hildebrand Avenue | ) | |
| Toledo, Ohio 43604 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **PLAINTIFF'S FIRST AMENDED** |
| | ) | **COMPLAINT FOR DAMAGES AND** |
| LEMKE & WHITAKER INC. | ) | **REINSTATEMENT** |
| 5350 Airport Highway, Suite 140 | ) | |
| Toledo, Ohio 43604 | ) | **JURY DEMAND ENDORSED** |
| | ) | **HEREIN** |
| **Serve also:** | ) | |
| Lemke & Whitaker Inc. | ) | |
| c/o Jeffrey A. Lemke | ) | |
| 5350 Airport Highway, Suite 140 | ) | |
| Toledo, Ohio 43604 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Andrea Woodson, by and through undersigned counsel, files her Complaint against the Defendant, states and avers the following against Defendants:

**PARTIES, JURISDICTION, AND VENUE**

1. Woodson is a resident of the city of Toledo, county of Lucas, state of Ohio.

2. Lemke & Whitaker Inc. ("Lemke") is a domestic corporation that operates a business located at 5350 Airport Highway, Suite 140, Toledo, Ohio 43604.

3. At all times referenced herein, Lemke was a company with less than 500 employees subject to the FFCRA, which in turn is comprised of the Emergency Paid Sick Leave Act ("EPSLA") and the Emergency Family Medical Leave Expansion Act ("EFMLEA").

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Woodson is alleging a Federal Law Claim under the Families First Coronavirus Response Act ("FFCRA"), Pub. L No 116-117, 134 Stat. 178 (2020).

5. All of the material events alleged in this Complaint occurred in Lucas County.

6. Therefore, personal jurisdiction is proper over Defendants pursuant to R.C. § 2307.382(A)(1) and (4).

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

8. Woodson is a former employee of Lemke.

9. Woodson was employed through Lemke, a staffing company, and placed as a temporary employee at Argus Corporation.

10. Lemke placed Woodson at Argus on or about March 11, 2019.

11. Lemke and Argus were co-employers of Woodson.

12. Lemke placed Woodson at Argus.

13. Lemke and Argus contracted for Woodson to be placed at, and perform work at, one of Argus' locations in Toledo.

14. Lemke had the power to terminate its contract with Argus concerning Woodson's assignment at Argus.

15. Lemke had the power to set Woodson's rate of pay.

16. In the event that Argus or Lemke terminated the contract for Woodson's assignment at Argus, Woodson would not be compensated until Lemke either placed Woodson at a new assignment, or until Woodson obtained new employment.

17. During Woodson's assignment at Argus, she regularly took up extra hours.

18. During Woodson's assignment at Argus, Woodson performed extra duties in order to be viewed favorably in the hopes that she would be hired on as a permanent employee.

19. Woodson had a strong performance record at Argus, with little to no meaningful history of discipline.

20. On or around March 2020, Argus shut down its operations due to the COVID-19 virus.

21. On or around March 2020, Argus temporarily laid its employees and temporary employees off, including Woodson.

22. Argus made it clear to employees and temporary employees that individuals would be brought back to work at a later date.

23. Lemke confirmed to Woodson that Argus intended to return her to work after the initial shutdown due to the COVID-19 virus.

24. Argus brought back supervisors a few weeks after the initial COVID-19 shutdown.

25. In or around May 2020, Argus started to bring back the rest of its workforce that it temporarily laid-off.

26. On May 27, 2020, Argus contacted Lemke and requested for Woodson to be returned to her assignment at Argus.

27. On May 27, 2020, Lemke informed Woodson that she was to return to work at Argus on June 2, 2020.

28. During all material events asserted herein, Jessica Segura worked for Lemke.

29. On June 1, 2020, Woodson informed Segura that she had been exposed to someone who tested positive for the COVID-19 virus.

30. On June 1, 2020, Woodson provided Segura a doctor's slip stating: "Andrea Woodson was seen in my clinic on 6/1/2020. Please excuse her illness related absence. She is currently awaiting COVID-19 testing results."

31. On June 1, 2020, Lemke was a covered employer under the FFCRA.

32. On June 1, 2020, Woodson was an eligible employee under the FFCRA.

33. On June 1, 2020, Woodson was entitled to utilize FFCRA leave as a result of being required to quarantine due to being exposed to someone with the COVID-19 virus.

34. On June 1, 2020, Lemke was aware that Woodson had been exposed to an individual who tested positive for the COVID-19 virus.

35. Lemke advised Argus that Woodson had been exposed to an individual who tested positive for the COVID-19 virus.

36. Lemke did not provide Woodson information on applying for and utilizing FFCRA leave.

37. Lemke did not provide Woodson with FFCRA leave.

38. Lemke interfered in Woodson's rights under the FFCRA when it failed to provide Woodson with information regarding FFCRA leave.

39. Lemke interfered in Woodson's rights under the FFCRA when it failed to provide Woodson with FFCRA leave.

40. On June 10, 2020, Woodson advised Segura that she had received a negative test result for the COVID-19 virus.

41. After Woodson provided Segura a negative test result for the COVID-19 virus, Segura advised Woodson that she was still "waiting to hear back" from Argus regarding a return to work date for Woodson.

42. Segura reached out to Corey Lambert, the Human Resources Manager for Argus on June 10, 2020 to advise that Woodson had tested negative and could return to work.

43. On June 10, 2020, Lambert advised Segura that "We have no spot for her."

44. Lemke had a duty to return Woodson to work at Argus when Woodson qualified for FFCRA leave.

45. Lemke interfered with Woodson's rights under the FFCRA in failing to return her to work when she qualified for FFCRA leave.

46. Argus in fact had a spot open for Woodson on June 10, 2020.

47. Had Lemke provided Woodson with FFCRA leave, Lemke and Argus would have been required to return Woodson to her assignment on or shortly after June 10, 2020.

48. But for Lemke's failure to provide Woodson with FFCRA, Woodson would have remained staffed at Argus.

49. In providing Lemke a doctor's slip stating that Woodson had been exposed to an individual who had tested positive for the COVID-19 virus, Woodson provided sufficient information that Woodson qualified for FFCRA leave.

50. Lemke retaliated against Woodson by failing to return her to work.

51. Lemke failed to assign Woodson to a new assignment following Argus.

52. Lemke retaliated against Woodson by failing to assign her to a new assignment after Argus in retaliation for her attempt to utilize FFCRA leave.

53. As a result of Lemke's conduct, Woodson has suffered, and continues to suffer from damages.

## COUNT I: UNLAWFUL INTERFERENCE WITH FFCRA RIGHTS

54. Woodson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

55. Pursuant to FFCRA, employers are required to provide employees with four weeks of paid sick time if the employee is unable to work because of the need to quarantine as a result of being exposed to an individual who tested positive for the COVID-19 virus.

56. On June 1, 2020, Defendant was a covered employer under the FFCRA.

57. On June 1, 2020, Woodson engaged in protected activity providing a doctor's note to Lemke notifying Lemke of a need to quarantine as a result of the COVID-19 virus.

58. Defendant failed to provide Woodson with information regarding how to apply for FFCRA leave.

59. Defendant did not provide Woodson with FFCRA leave after she provided Defendant with sufficient information that she needed to use such leave.

60. Defendant failed to return Woodson to Argus when she qualified for FFCRA leave.

61. Defendant did not pay Woodson during the time she quarantined as a result of her COVID-19 virus exposure.

62. Defendant unlawfully interfered with Woodson's rights under the FFCRA.

63. Defendant's refusal to pay Woodson for her FFCRA protected sick leave violated and interfered with Woodson's FFCRA rights.

64. Defendant's failure to return Woodson to work after her COVID-19 virus exposure violated the FFCRA.

65. Violations of the FFCRA are subject to enforcement under Sections 16 and 17 of the Fair Labor Standards Act. 29 U.S.C. §216, 217.

66. As a direct and proximate result of Defendant's conduct, Woodson is entitled to all damages provided for in 29 U.S.C. § 216 and 217, including liquidated damages, costs and reasonable attorney's fees.

## COUNT II: UNLAWFUL RETALIATION IN VIOLATION OF THE FFCRA

67. Woodson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

68. The FFCRA provides that it shall be unlawful for any employer to discharge, discipline, or in any other manner discriminate against any employee who uses, or attempts to use FFCRA leave.

69. Pursuant to 29 C.F.R. § 826.151 and 29 U.S.C. § 2615, it is unlawful for an employer to retaliate against, or interfere in any way against an individual who utilizes FFCRA leave.

70. The FFCRA applied to employers with less than 500 employees.

71. Lemke employs less than 500 employees.

72. Lemke is subject to the FFCRA.

73. On June 1, 2020, Woodson engaged in protected activity by providing Lemke with sufficient information regarding a need to utilize FFCRA leave as a result of being exposed to an individual who tested positive for the COVID-19 virus.

74. Defendant retaliated against Woodson by not providing her with FFCRA leave.

75. Defendant retaliated against Woodson by not returning her to work at Argus after she had to quarantine due to a COVID-19 virus exposure.

76. Defendant retaliated against Woodson by not finding her a new assignment after her assignment at Argus ended.

77. Defendant terminated Woodson's employment as a result of her requesting to utilize FFCRA leave.

78. As a result of Defendant's actions, Woodson has suffered and continues to suffer from damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Andrea Woodson requests judgment against Defendant and for an Order:

(a) Issue an order requiring Defendant to restore Woodson to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against Defendant of compensatory and monetary damages to compensate Woodson for compensatory damages, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Woodson' claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Daniel S. Dubow*

Daniel S. Dubow (0095530)
Kevin A. Buryanek (0099300)
Shashelia Degraffinried (101692)
**SPITZ, THE EMPLOYEE'S FIRM**
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email:  daniel.dubow@spitzlawfirm.com
        kevin.buryanek@spitzlawfirm.com
        shelia.degraffinried@spitzlawfirm.com

*Attorneys For Plaintiff*

## **JURY DEMAND**

Plaintiff Andrea Woodson demands a trial by jury by the maximum number of jurors permitted.

/s/ *Daniel S. Dubow*

Daniel S. Dubow (0095530)
Kevin A. Buryanek (0099300)
Shashelia Degraffinried (101692)
**SPITZ, THE EMPLOYEE'S FIRM**